UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Plaintiff,

v.                               Case Number 10-13889
                                     Honorable Thomas L. Ludington

AT&T MOBILITY SERVICES LLC,

      Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE PORTIONS OF EXPERT REPORT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, CANCELING HEARING, AND DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE**

The EEOC ("Plaintiff") brought this lawsuit on behalf of Cynthia Davey ("Davey"), who was employed as a Store Manager at AT&T Mobility LLC's ("AT&T") phone store in Saginaw, Michigan. The EEOC alleges that AT&T violated the Americans with Disabilities Act ("ADA") by failing to accommodate Davey when she sought to return from a disability leave in March 2008. At that time, Davey's physician had imposed a restriction that she could work no more than 40 hours per week and stand no more than two hours a day. Now before the Court is AT&T's motion for summary judgment (ECF No. 21). AT&T contends that it is an essential function of a Store Manager position that he or she be able to work more than 40 hours a week.  AT&T also filed a motion to strike portions of Plaintiff's expert report prepared on August 25, 2011, by Davey's treating physician, Dr. Jahnke, stating that Davey was able to work more than 40 hours a week but her health would not allow her to work 50 to 60 hours per week regularly. ECF No. 26. Plaintiff contends that the ability to work more than 40 hours per week is not an essential requirement of a Store Manager's position, that Davey was able to work more than 40 hours per week despite her doctor's restrictions

in March 2008 providing that she could not exceed 40 hours per week, that AT&T failed to engage in an interactive process to find a reasonable accommodation, and failed to offer Davey a reasonable accommodation.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motions. Accordingly, the motions will be decided on the papers submitted. E.D. Mich. LR 7.1(f)(2). For the reasons provided herein, the Court will grant in part and deny in part AT&T's motion to strike portions of Dr. Jahnke's August 2011 report and grant AT&T's motion for summary judgment.

## I.    Facts

Davey began working at AT&T in approximately November 1997 as a part-time sales representative. In 2004, Davey was promoted to an Assistant Store Manager position at an AT&T phone store in Flint, Michigan, in AT&T's Detroit market. At that time, she was working an average of 45 hours per week and her director of sales was Ken Gaffga.

 Davey was diagnosed with Multiple Sclerosis ("MS") in 2005. MS is a chronic neurological disease for which there is no cure. ECF No. 24 Ex. 16 at 1,6. If Davey became fatigued, she could suffer a flair-up of her condition, resulting in a number of physical problems, including pain and weakness in her legs, difficulty walking, and temporary vision loss. Davey has experienced episodic exacerbations of her MS, also referred to as relapses. *Id.* at 12. When she experiences an episodic, MS-related relapse, Davey suffers from fatigue, *id.* at 8-9, pain and weakness in her legs, difficulty walking, and temporary blurred vision. Davey Dep. at 34-35, 74. Notwithstanding her MS, Davey was able to continue working 45 hours a week as an Assistant Manager without any relapses or

issues with fatigue in 2005 and January 2006.

In February 2006, Davey applied for and was selected as a Store Manager at a new AT&T store that was opening in Saginaw, Michigan. She was interviewed for this new position by William ("Bill") Bendetti, who was the Director of Sales for the Outer Michigan/Northern Indiana market ("OMNI market"). When Davey began this new position, Scott Benton, the Area Retail Sales Manager, was her immediate supervisor and Bill Bendetti was her second level supervisor. Davey had a great relationship with Scott Benton, and her relationship with Bill Bendetti was initially also very good.

During the preparation for opening the Saginaw store, Davey was working twelve-hour days, six or seven days a week.  At the time of the store opening, Bendetti decided not to hire an Assistant Manager and staffed the store with three sales representatives. Throughout 2006, Davey worked 55 to 60 hours a week. Her hours did not decrease because Bendetti required that all managers in his market area work a six-day week. Bendetti did not have any minimum hour requirements. The Saginaw store was open seven days a week, ten to twelve hours each day, and Bendetti found it necessary to have the store manager present for most of that time in order to ensure that the store ran smoothly. This was not an AT&T requirement and, by contrast, the Detroit market scheduled its Store Managers to work at least 40 hours a week but required them to work over time as needed to meet the requirements of the position.

As a Store Manager, Davey was responsible for virtually all facets of the store, including customer service, staffing, training, motivating team members, managing payroll, budgets, meeting sales quota, increasing sales in the store, maintaining proper inventory controls, managing daily cashhandling and accounts payable, managing profit and loss, preparation and auditing of financial

statements, strategic planning, ensuring that in-store displays and store appearance meets Company standards, and continuously analyzing processes to simplify procedures, improve processes and maximize resources. ECF No. 21 Ex. A Job Description. Bendetti did not believe that the store manager position could be adequately performed in a forty-hour work week based up on the job's responsibilities which also required physical presence at the store. Members of AT&T's management, human resources personnel, a former area retail sales manager, and the Flint, Michigan, store manager agreed that 45 to 50 hours a week was the average time that a store manager was expected to work, and the hours increased during the holiday season or during a new product launch. Senior Human Resource Manager Angela Ritthaler testified that there was no way she could guarantee a store manager that she would not have to work more than 40 hours, because there was no limit to the amount of hours that a manager or executive might be expected to work depending on the circumstances. ECF No. 21 at 13.

In April 2007, Davey commenced a short-term disability leave, after she claimed that her MS symptoms were exacerbated as a result of working extended hours. On May 21, 2007, Davey returned from leave. At that time, she submitted a permanent restriction from her treating physician of no more than 40 hours per week, not to stand/walk/sit more than 8 hours per day, and not to work more than 8 hours a day/40 hours a week. ECF No. 21 Ex. C. AT&T's Senior Human Resources Manager Angela Ritthaler advised Davey that AT&T would temporarily honor Davey's restrictions, but that she must submit them to Gates McDonald, the representative for AT&T's third party disability administrator, by the end of the week. *Id.* On May 29, 2007, Davey sent an email to Ritthaler indicating that Gates McDonald had already opened a file and asking if there was a specific limit as to the number of hours a retail store manager was required to work. Ritthaler responded:

-4-

> There is no limit on the amount of hours salaried managers/executives work. It is based on business need, no matter what your position may be.
>
> And as you know being a manager, there are several instances when we do work way above and beyond our 50-60 hour work week – i.e., when an employee calls in sick and the manager is the only employee, they must obviously stay and remain in the store until other help arrives (if at all).
>
> Given your title/position, there is no way we can ever guarantee a 40 hour work week. Bill and Scott are trying to accommodate your schedule for now, but there is no circumstance we as a company can take to guarantee you 40 hours over the long term.

ECF No. 21 Ex. D. Davey's management determined that it could not accommodate her restriction and Davey commenced another disability leave. While Davey was on disability leave, an Assistant Manager from the Lansing store filled in as acting Store Manager. She returned to work on June 14, 2007, without any restrictions and worked until October 2007. In October 2007, she suffered another exacerbation of her MS symptoms and went on leave until March 2008. At this time, Davey had a total of six sales representatives but still did not have an Assistant Manager. Because of a change in AT&T policy, an Assistant Manager was hired on the same day Davey resumed disability leave in October 2007. According to the company's job descriptions, Assistant Managers share the same responsibilities as the Store Manager, and are in charge of the store when the Store Manager is not present.  ECF No. 24 Exs. 9 and 10.

On March 3, 2008, Davey submitted an Employee's Written Request for Accommodation (ECF No. 21 Ex. E), along with a Treating Physician's Return to Work Form and ADA Medical Evaluation Package (ECF No. 21 Ex. F). Davey's treating physician indicated, among other things, that Davey could return to work on March 31, but that she could not work more than 40 hours per week, and could not stand or walk more than two hours. *Id.* Her treater further indicated that these restrictions were permanent. *Id.*

Pursuant to AT&T's Return to Work Process (ECF No. 21 Ex. G), AT&T's Return to Work Manager, Tina Nelson, contacted Davey to determine the nature of her restrictions to see if they could be accommodated. AT&T's ADA Administrative Process provides that the responsibilities of the Return to Work Manager include initiating an interactive process with the employee to evaluate accommodation requests and specific needs, obtaining additional medical information as needed, and making recommendations to department managers and the Human Resources Manager to determine reasonable accommodations.  ECF No. 24 Ex. 11. Regarding an employee's request to return to work with an accommodation, the Human Resources Manager makes a final decision to approve, deny or provide other recommendations for accommodations. Ritthaler Dep. at 96-97.

Nelson did not make the determination of whether the restriction could be accommodated, but rather acted as a liaison between Gates McDonald, Defendant's third party disability administrator, and the business unit to explore ways that the restriction might be accommodated. As part of her discussions with Davey, Nelson asked if Davey's treating physician would approve a wheelchair to address her restriction of no standing for more than two hours. Davey responded in writing that her treater would approve a wheelchair, but that her treater would not lift the 40 hour restriction "as she feels it is conducive to maintaining my health regarding my multiple sclerosis. She removed it once at my request in order to return to my job back in May 2007 when I was informed that I could not return to management with a 40 hour restriction and I ended up relapsing even worse than the first time in April of 2007." ECF No. 21 Ex. H.

Nelson testified that if AT&T received a restriction from a doctor limiting an employee to 40 hours, the company would not have allowed the employee to work more than 40 hours, even if the employee had wanted to work more hours. Nelson Dep. at 47-48. Nelson advised Angela

Ritthaler of the restriction and asked if it could be accommodated. Ritthaler later told Nelson that the 40 hour restriction could not be accommodated because the company was bound by the permanent restriction that Davey's physician placed on her and the fact that the Store Manager's position that Davey held required being available to work more than 40 hours per week.

On March 24, 2008, Ritthaler sent a letter to Davey advising her that pursuant to the Company's current initiatives, she might be required to work from 48 to 56 hours per week in the store manager's position and that "[t]he ability to work flexible hours, including evenings, weekends, holidays and overtime is an essential function of the Store Manager I position and at this time we are unable [to] accommodate this request and guarantee you a 40 hour per week schedule." ECF No. 21 Ex. I. Ritthaler clarified at her deposition that the initiative dictated which hours during the day a manager must work but not how many hours a manager must work. Ritthaler was unable to explain how she came to the requirement of 48 to 56 hours per week. Ritthaler Dep. at 123-24, 130. Ritthaler placed Davey on a 30-day paid leave of absence during which she would have access to AT&T's intranet job posting network so that she could look for an open position within AT&T that she was qualified for and able to fill. *Id.* Davey was advised at that time that if she was unable to find another position at the end of 30 days, she could be separated from the company.

During the 30-day paid leave of absence, Ritthaler and Nelson remained in contact with Davey. Davey testified that Ritthaler was friendly and that Nelson was very helpful and cooperative, and admitted that she never asked Nelson or Ritthaler to contact anyone on her behalf. Davey Dep. at 112, 119, 136. Davey testified that during the job search, there were no open positions for which she was qualified that were within what she considered a reasonable driving distance from Saginaw. *Id.* at 115-123, 188. Davey asked if a financial representative position could be created for her, but

was advised that the Saginaw store did not perform enough activations to warrant the creation of such a position. *Id.* at 100-101, 248.

Davey's employment was terminated at the end of her 30-day paid leave of absence. Ritthaler made the ultimate decision to terminate Davey's employment but discussed the decision with Davey's management and AT&T's Legal Department. Davey's 40-hour work week restriction was still in place at the time her employment ended, and had not been lifted as of the filing of this action. Davey Dep. at 48-49.

**II.   AT&T's Motion to Strike Portions of Dr. Jahnke's August 2011 Expert Report**

AT&T moves to strike portions of an August 25, 2011 report from Plaintiff's treating physician, Dr. Barbara Jahnke, that contradict written documents submitted to AT&T in March 2008 with respect to the work restrictions for Davey. Dr. Jahnke's August 2011 expert report, attached to Plaintiff's response to AT&T's motion for summary judgment, was prepared three and a half years after Davey's employment was terminated and provides a different opinion about Davey's work restrictions than Dr. Jahnke presented in March 2008 when Plaintiff's employment was terminated. Plaintiff contends that the new report offers evidence creating an issue of fact such that its ADA claim brought on Davey's behalf should survive summary judgment.

AT&T argues that the appropriate "evidence" in this case is that which Davey provided AT&T in March 2008 when it made the decision that it could not accommodate Davey based on Dr. Jahnke's permanent "maximum 40 hour work week" restriction. In response to AT&T's inquiry if the restriction could be modified or lifted, Davey indicated in writing that Dr. Jahnke would not lift the restriction. AT&T argues that report written three and a half years after Davey left the workplace, which clearly contradicts the written restriction her doctor previously provided is not

-8-

relevant evidence and should not be admissible in this case.

Further, AT&T submits that Dr. Jahnke is a neurologist and her legal interpretations and quotations from the ADA are subject to a *Daubert* challenge. Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness, qualified as an expert by knowledge, skill, experience, training, or education may testify there to in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods to the facts of the case.

Pursuant to Federal Rule of Evidence 702, the Court is obligated to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The trial court has a "gatekeeping obligation to conduct a preliminary assessment of relevance and reliability whenever a witness testifies as to an opinion based on some sort of specialized knowledge. *Board. of Trustees v. Palladium Equity Partners*, 722 F. Supp. 2d. 845, 852 (E.D. Mich. 2010).

Expert testimony is not admissible unless it will be helpful to the factfinder. Such testimony is not helpful when it is unreliable or irrelevant. *Board of Trustees v. Palladium Equity Partners*, 722 F. Supp. 845, 852-53 (E.D. Mich. 2010). Expert opinions and reports which go beyond the expertise of the purported expert are subject to a motion to strike. *Id.* Here, AT&T contends that Dr. Jahnke's opinions, formed in August 2011, which contradict the unambiguous written restrictions that she issued in March 2008, are not "relevant to the task at hand" with respect to the Court's consideration of AT&T's Motion for Summary Judgment. Additionally, Dr. Jahnke's citations to and legal interpretations of the ADA do not rest on a reliable foundation, given that her expertise is neurology and the references to the ADA should be stricken from her report.

-9-

Plaintiff contends that Dr. Jahnke's report will aid a jury in determining whether Davey was able to work more than 40 hours a week with a reasonable scheduling accommodation. Plaintiff argues that this is relevant because AT&T did not contact Dr. Jahnke on its own and explore the possibility of the physician altering her prior judgment or explore possible accommodations. Had AT&T contacted Dr. Jahnke, Plaintiff asserts it would have learned that the 40-hour scheduling restriction was flexible. Moreover, Plaintiff argues that to the extent that portions of Dr. Jahnke's report are inconsistent, it merely reflects a credibility issue, not a question of admissibility, and AT&T has offered no legal authority that a later inconsistent expert statement should be stricken. Plaintiff requests that Dr. Jahnke's report be allowed because it reinforces the factual issue that Davey could have worked more than 40 hours per week.

Dr. Jahnke's August 2011 report that provides a different opinion than that presented to AT&T in March 2008 is not helpful and is potentially confusing to a factfinder. There is no evidence that the recommendation in May 2008 was ambiguous, rendering the August 2011 conflicting opinion irrelevant. As will be discussed below, AT&T had no affirmative duty to contact Davey's treating physician to question the work restrictions she had imposed. Moreover, the relevant evidence to the issue before the Court is that which was presented to AT&T at the time it determined it was unable to accommodate Davey and terminated her employment. AT&T's motion to strike portions of Dr. Jahnke's report providing a different opinion than that which was presented in May 2008 will thus be granted.

### III.   AT&T's Motion for Summary Judgment

#### A.   Standard of Review

A motion for summary judgment should be granted if the movant shows that "there is no

-10-

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be proven or is genuinely disputed must support the assertion by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  The party seeking summary judgment has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. Pro. 56(e)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If the opposing party fails to raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment.  *Anderson*, 477 U.S. at 250.

The court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

## B.    Discussion

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a) prohibits an employer from terminating the employment of an otherwise qualified individual on the basis of disability. To establish a prima facie case of disability discrimination under the ADA, a plaintiff must prove: (1) she is an individual with a disability; (2) she is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) she was discharged solely on account of her disability. *Walsh*, 201 F.3d at 724; *see also Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1183-84 (6th Cir 1996) ("The disabled individual bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable . . . [and] the disabled individual must prove that he or she would in fact be qualified for the job if the employer were to adopt the proposed accommodation.").

### 1.    Qualified Individual with a Disability

AT&T contends that the EEOC cannot establish the second element because Davey was not qualified to perform the job requirements because she was unable to perform an essential function of her position. Under the ADA, a "qualified individual with a disability" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires. 42 U.S.C. § 12111(8). According to the Act's definitions, an employee incapable of performing the essential functions of his or her job is not a qualified individual with a disability, and is, therefore, not entitled to the protections of the ADA. 42 U.S.C. § 12111(8), 12112(a), *Fobar v City of Dearborn Heights*, 994 F. Supp. 878 (E.D. Mich. 1998); *Parker v. Metropolitan Life Ins. Co.*, 99 F.3d 181, 185 (6th Cir. 1996). Essential functions of a job are those functions which the individual who holds the position must be able to

perform and that could not be removed without fundamentally altering the position. 29 C.F.R. § 1630.2(n). An inquiry into whether a particular duty is an "essential function" of the job should be based on more than statements in a job description. *Hall v. United States Postal Service*, 857 F.2d 1073, 1079 (6th Cir. 1988), *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000).

When considering what job functions are essential, courts consider (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time on the job spent performing the function; (4) consequences of not performing the function; (4) consequences of not requiring the incumbent to perform the function; (5) terms of a collective bargaining agreement, if any; (6) work experience of past incumbents on the job, and/or (7) current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2(n)(3).

AT&T contends that it is undisputed that Davey's position required that she be able to work more than 40 hours per week as an essential function of the job. Davey's first and second level supervisors and Human Resources Manager, as well as Davey and another store manager, testified that the position requires work weeks in excess of 40 hours on a consistent basis. ECF No. 21 at 11. AT&T emphasizes that Davey's doctor's restriction indicated that she had a permanent restriction of not working more than 40 hours a week. Thus, AT&T argues that Davey is not a "qualified individual with a disability" and is not entitled to the protections of the ADA.

Plaintiff, however, contends that Davey was able to work more than 40 hours a week, but that she was unable to work the excessive hours required in her market of 55 to 60 hours a week. Before Davey worked as a Store Manager in Bendetti's Market, she worked an average of 45 hours

-13-

a week as an Assistant Manager while she had MS. She testified that during that time, she had no issues with fatigue or relapses. Davey also advised AT&T that she was willing to have her restriction adjusted to reflect the hours of work that would be acceptable because she and her doctor, Dr. Jahnke, were willing to work with AT&T on a reasonable restriction on hours as long as the hours were not limitless. Instead, Plaintiff contends that AT&T would not work with Davey on restructuring her schedule to limit her working a long period of time without rest and with reasonable hour restrictions.

There is, however, no evidence that the work restrictions presented to AT&T were flexible as Dr. Jahnke offered to no clarification that the 40-hour work week restriction was not absolute and permanent in the section of the form that provides an area to do so.  ECF No. 21 Ex. F.  When AT&T inquired if the restriction could be lifted, Davey responded that Dr. Jahnke would not lift the restriction because she felt it was conducive to maintaining Davey's health.  Davey further explained that the last time the restriction was lifted in May 2007, she relapsed worse than her first relapse in April 2007.  The only possible issue of fact would be whether over 40 hours a week was an essential function of the job, and Davey concedes that working more than 40 hours a week, at least periodically if not regularly, is an essential function of the Store Manager position.  Because Davey was unable to perform an essential function of her job, Plaintiff is unable to satisfy the second elements for establishing a prima facie case of disability discrimination under the ADA.

## 2.    Reasonable Accommodation and Interactive Process

Even if Plaintiff were able to establish that Davey was a qualified individual with a disability, AT&T contends that Plaintiff cannot establish that it failed to accommodate Davey. The only "accommodation" that Davey sought was the ability to work only 40 hours per week in her

store manager's position. In the Sixth Circuit, ADA claims premised upon an employer's failure

provide a reasonable accommodation "fall within the category of cases in which the employer relies

on the employee's disability in its decision-making, and consequently are suitable for analysis under

the direct evidence framework." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir.

2007). The "direct evidence" framework is as follows:

> (1) The plaintiff bears the initial burden of establishing that he or she is disabled. (2)
> the plaintiff bears the burden of establishing that he or she is "otherwise qualified"
> for the position despite his or her disability: (a) without accommodation from the
> employer; (b) with an alleged essential job requirement eliminated; or (c) with a
> proposed reasonable accommodation. (3) The employer will bear the burden of
> proving that a challenged job criterion is essential, or that a proposed
> accommodation will impose an undue hardship upon the employer.

*Id.*; *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). AT&T contends that, in

essence, Davey wanted the company to accommodate her by eliminating an essential function of the

position. The law is clear, however, that an accommodation that eliminates an essential function of

the job is unreasonable. *Hall*, 857 F.2d at 1078.

Further, an employer may restructure a position as a means of accommodation, but such

restructuring only pertains to non-essential duties or marginal functions of a job. *Bratten v. SSI

Services, Inc.*, 185 F.3d 625, 632 (6th Cir. 1999); *see also Hoskins*, 227 F.3d at 729 ("the ADA does

not require employers to accommodate individuals by shifting an essential job function onto

others."). Here, the accommodation Davey sought would have required AT&T to hire a part-time

manager to handle Davey's managerial responsibilities that were in excess of Davey's 40 hour work

week. That type of "accommodation" is per se unreasonable. *See Bratten*, 185 F.3d at 632.

An employer may also accommodate an otherwise qualified individual by reassigning that

individual to a vacant position. *Id.* at 633-34. However, it is Plaintiff's burden to show that such

positions existed and were vacant at the time Davey's employment was terminated. *Monette*, 90 F.3d at 1186. Merely alleging that AT&T must have had some equivalent position for Davey to fill is not sufficient. *Id.* Here, AT&T provided Davey with a 30-day paid leave during which Davey could find an available position for which she was qualified and able to perform. Davey admitted there were no such open positions at the time her employment was terminated that were within what she considered to be reasonable driving distance. Davey Dep. at 115-123, 188.

"To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. 1630.2(a)(3). "This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* Both parties must participate in this process in good faith. *Jakubowski v. The Christ Hosp.*, 627 F.3d 195, 202 (6th Cir. 2011). Under the interactive accommodation process, the employee has the burden of proposing an initial accommodation. *Id.* The employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith, but taking the extra step of proposing counter accommodations may be additional evidence of good faith. *Id.*; *see also Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108, 1110 (6th Cir. 2008).

In this case, when Davey presented her 40 hour per week/no standing for more than two hours restriction, AT&T's Return to Work Manager, Tina Nelson, contacted her to see what possible accommodations could be made. Nelson proposed a wheelchair, which Davey indicated would help with the no standing restriction, but which would not help with the 40 hour per week restriction. Nelson asked if Davey's physician would lift the 40 hour restriction, and Davey responded that her physician would not because when the restriction was lifted in the past at Davey's request, Davey

suffered a flair-up of her MS symptoms. ECF No. 21 Ex. H. Both Nelson and Angela Ritthaler testified that it would have been inappropriate, given this restriction – and particularly given Davey's letter indicating that when the restriction had been lifted in the past, she had became more ill– to go back to Davey or Davey's physician to ask if the 40 hour restriction could be modified in some fashion. Ritthaler Dep. at 109, 111-113; Nelson Dep. at 47-48. AT&T further engaged in an interactive process with Davey when it provided Davey with a 30-day paid leave in which to find an open position. Both Ritthaler and Nelson were available to Davey during this time, and Davey testified that both were friendly and cooperative. Davey Dep. at 112, 119, 136.

"An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff." *Jakubowski*, 627 F.3d at 203; *see also Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008). Here, AT&T contends that it properly engaged in an interactive process with Davey in an attempt to see if an accommodation could be reached, but it was impossible to do so because the only accommodation that Davey sought was the ability to eliminate an essential job function from her position, which AT&T was not required to do as a matter of law.

Plaintiff, however, argues that the ability to work more than 40 hours a week was not an essential function of the job and that AT&T failed to engage in an interactive process. "To determine the appropriate reasonable accommodation [for a given employee], it may be necessary for the employer to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(a)(3). The purpose of this process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." Id. Accordingly, it requires "communication and good faith exploration of possible accommodations." *Talley*, 542 F.3d

at 1110. Although the interactive process is not described in the text of the ADA, it is mandatory and imposes a duty on both parties to participate in good faith. *Kleiber*, 485 F.3d at 871. "Employers 'who fail to engage in the interactive process in good faith face liability [under the ADA] if a reasonable accommodation would have been possible.'" *Lafata v. Church of Christ Home For The Aged*, 325 F. App'x 416 (6th Cir. 2009).

The employee has the burden of proposing an initial accommodation. *Jakubowski v. Christ Hospital, Inc.*, 627 F.3d 195, 202 (6th Cir. 2011). In this case, Davey proposed an initial accommodation when she requested an accommodation for her 40-hour work restriction. However, Plaintiff argues that in March 2008, AT&T failed to engage in meaningful dialogue to identify Davey's precise limitations, and explore possible accommodations. AT&T's failure to engage in the interactive process started with Return-To-Work Manager Tina Nelson. Under AT&T's disability accommodation policy, Nelson was Davey's primary point of contact for purposes of the interactive process. Plaintiff emphasizes that Nelson assumed that Davey was strictly limited to working 40 hours a week, based solely on her reading of the documents submitted related to the restriction and accommodation request. Nelson Dep. at 29-30, 37, 42, 49. Nelson never contacted Dr. Jahnke to explore whether the hourly restriction was flexible or obtain any other pertinent information. Nelson Dep. at 47, 49. Plaintiff contends that this is fatal to AT&T's argument that it engaged in a good-faith interactive process with Davey.

Plaintiff alleges that Ritthaler, as the final decision-maker, denied Davey's accommodation request because she assumed that an accommodation for Davey would require AT&T to guarantee Davey would never work more than 40 hours. ECF No. 24 Ex. 14. In addition, Ritthaler assumed that Davey could never exceed 40 hours under any circumstances. Ritthaler Dep. at 105-08.

Ritthaler, Plaintiff further argues, did not have any discussions with Davey in March 2008 as to whether Davey was physically capable of working more than 40 hours on occasion, or whether the restriction was flexible before making the decision to deny Davey's request for an accommodation. Ritthaler. Dep. at 89, 99-100. Nevertheless, Ritthaler concluded that it was not possible to accommodate Davey and guarantee a 40-hour work week because Store Managers needed to be able to work "overtime." ECF No. 24 Ex. 14. Thus, Plaintiff believes that Ritthaler concluded there were only two options – guarantee Davey a 40 hour week or deny the accommodation request altogether. She chose the latter. Based on the record, Plaintiff contends that there are genuine issues of material fact as to whether AT&T failed to engage in the interactive process with Davey in good faith.

The record evidence does not support Plaintiff's argument that AT&T failed to engage in an interactive process with Davey. As previously noted, the employee has the burden of proposing an initial accommodation. Davey suggested a 40 hour work week. If her 40-hour work week restriction was flexible, as she now suggests, it was her burden to make this information known to AT&T. Davey clearly stated, in response to AT&T's inquiry if the 40-hour maximum hour limit could be lifted, that Dr. Jahnke would not lift the restriction because it was conducive to maintaining Davey's health and that the last time the restriction was removed, Davey relapsed. ECF No. 21 Ex. H. Thus, AT&T did not breach its obligation to engage in an interactive process in good faith by failing to propose a counter-accommodation that was clearly in conflict with Davey's doctor's restrictions. *See Klieber*, 485 F.3d at 871 (stating that the court should assign responsibility to the party obstructing the interactive process).

Plaintiff also argues that the record evidence establishes that a reasonable accommodation via a modified or reduced work schedule would have been possible but for AT&T's lack of good

faith in the interactive process. 42 U.S.C. § 12111(9). Had AT&T questioned Dr. Jahnke's recommendation, Plaintiff submits that it would have learned that Davey's restriction was flexible and that Davey could work more than 40 hours, if and when necessary, especially with a flexible schedule to help her control fatigue. ECF No. 24 Ex. 16 at 14. In addition, AT&T could have learned through an interactive process that the 6-day, 60 hour-per-week schedule is what led to Davey's relapses due to fatigue and necessitated the work restriction and not that Davey was strictly restricted to working only 40 hours per week. AT&T, however, did not err by failing to contact Davey's doctor to question the 40-hour work week restriction that had been imposed. Plaintiff offers no legal authority for the proposition that a defendant in an ADA case has such a duty, and the evidence presented to AT&T, namely Dr. Jahnke's medical restrictions and Davey's letter clarifying that the 40-hour restriction could not be lifted, would not suggest that further inquiry was necessary.

Nonetheless, Plaintiff contends that the evidence shows that a modified schedule for Davey would have been reasonable. First, Bendetti's 6-day mandatory schedule was not company policy and was not a requirement for Store Managers in other markets. Benton Dep. at 38-39. Store Managers of the Detroit market were tentatively scheduled to work 5 days, 40-hours a week. Thompson Dep. at 36, 47. Davey could have been given the same tentative schedule, with the understanding that she would work longer hours when necessary. Second, given Davey's testimony that she had no issues with her disability when she averaged 45 hours per week, Davey could have been accommodated with a schedule that would allow her to work an average of 45 hours. The record suggests that a 45-hour schedule would have been possible, even with Bendetti's claim that his managers worked a flexible 48-hour schedule, which allowed for a mid-week half shift and

possible short shifts on Saturdays if business was slow. Bendetti Dep. at 86, 79-81. Third, by the time Davey requested an accommodation in March 2008, the Saginaw store had an Assistant Manager. Because Davey would have had another manager to help her cover the store, it would have been possible for AT&T to accommodate her with a modified, reduced schedule.

As previously noted, any speculation that Davey could have worked more than 40 hours a week does not create an issue of fact because both she and Dr. Jahnke made clear that 40 hours was the maximum Davey was allowed to work per week. To the extent that Plaintiff is arguing that AT&T should have shifted some of Davey's duties to the Assistant Manager, this still would not be a reasonable accommodation to the extent that required Davey to work 40 hours or less per week or shifted any of Davey's essential duties to the Assistant Manager. *Bratten*, 185 F.3d at 632; *see also Hoskins*, 227 F.3d at 729 ("the ADA does not require employers to accommodate individuals by shifting an essential job function onto others."). Moreover, another store manager testified that he has two assistant store managers but cannot recall ever working only a 40-hour week during his five years as a Store Manager. Thompson Dep. at 36-37, 40, 46. The record makes clear that Store Managers regularly work over 40 hours a week in order to perform the essential functions of the position.

Next, Plaintiff contends that there is evidence that, effective May 1, 2011, AT&T implemented a new scheduling policy. Under this policy, all managers are scheduled to work 5 days per week for a total of 46 hours. Ritthaler Dep. at 148-49; Thompson Dep. at 40-41. The work hours vary from day to day. Thompson Dep. at 41. The schedules of Store Managers and Assistant Managers are arranged so that they are all allowed an entire weekend off once a month. Ritthaler Dep. at 148-49; Thompson Dep. at 40. Bendetti's market is subject to the policy. Bendetti Dep. at

-21-

95-96. A schedule of this nature would have accommodated Davey, given she was able to work around 45 hours without relapses and would have had an extra day off. Plaintiff does not explain why the Court should consider a policy that went into effect over three years after Plaintiff's employment was terminated as evidence of a reasonable accommodation in March 2008.

Finally, Plaintiff contends that AT&T did not accommodate Davey by placing her on a 30-day job search. An employer should consider a job transfer when a disabled employee "can no longer perform his old job even with an accommodation. . . ." *Burns v. Coca Cola Enter. Inc.*, 222 F.3d 247, 257 (6th Cir. 2000). AT&T asserts that it reasonably accommodated Davey by placing her on a 30-day job search and allowing her to search for vacant positions for which she was qualified. Plaintiff argues that AT&T's accommodation was not effective because Davey was not placed into another position. It is Plaintiff's burden, however, to show that another position existed and was vacant at the time Davey's employment was terminated. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). Plaintiff has not met this burden.

**IV**

Accordingly, it is **ORDERED** that Defendant's motion to strike portions of Dr. Janke's expert report (ECF No. 26) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant's motion for summary judgment (ECF No. 21) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 15, 2011

-22-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS